## CECIL GRAGG v. STATE.

No. A-9525. May 12, 1939.

(90 P. 2d 680.)

Tant & Flinn, of Oklahoma City, for plaintiff in error.

Mac Q. Williamson, Atty. Gen., for the State.

DAVENPORT, J. By information the defendant was charged with illegal possession of intoxicating liquor, to wit, 48 pints of tax-paid liquor, was tried, convicted, and was sentenced by the court to pay a fine of $100, and to be confined in the county jail for 60 days. From this judgment and sentence, the defendant appeals.

Before the case proceeded to trial, the defendant filed a motion to suppress the evidence on the ground that the evidence obtained by the deputy sheriff in the above cause was obtained by unlawful seizure and search, and on the ground that the deputy sheriff, at the time of obtaining the evidence by search warrant, obtained it without consent of the defendant, and said defendant at the time of the seizure and search was not violating any of the laws of the city, this state, or this county, and the evidence so obtained was not apparent.

The defendant, in support of his motion to suppress the evidence, called P. L. Borden, and handed the witness a paper and asked him what it was, and the witness answered, "A search warrant," and also identified the paper which he stated was a copy of the affidavit for the search warrant.

The witness stated:

"We searched the premises described in the search warrant, that was known as the Belmont Hotel. I would say it had 25 or 30 rooms. The search warrant called for the second floor of a two-story brick building, located at 118½ North Broadway, Oklahoma City. We found some whisky at this place. In three different places there on the second floor of the two-story building known as the Belmont Hotel. We found one pint in an old plant in a linen closet in the dining room, and found another in a plant in the south hallway in front of the gents' toilet, and found a pint in a plant in the pay telephone booth, located in the hallway. There were a number of people in the hotel. We arrested the defendant Cecil Gragg at the time we made the search."

The motion to suppress was overruled, and the defendant excepted.

When the court ordered the case to trial, the defendant objected to a jury being called, and objected to going to trial for the reason the court is wholly without jurisdiction to try this case.

The objection was overruled, and defendant saved an exception.

The jury was impaneled.

J. G. Muse, the first witness called by the state, testified in substance as follows:

"My name is J. G. Muse. I am on the police force in Oklahoma City. I know the defendant Cecil Gragg; have known him about a year and one-half. I have observed him staying at the Belmont Hotel.

"On the 18th day of September, 1937, I went to the Belmont Hotel, and the defendant Cecil Gragg was there behind the desk. We presented him with a search warrant and told him we wanted to search the place, and he said, 'All right, go right ahead.' We searched the place, and found forty-eight pints of tax-paid liquor. We asked him if it was his whisky or Mr. Sanford's whisky, and he said it was his whisky. The defendant said that Mr. Sanford was at the hospital to see his son who had been injured. We took the whisky to the police station and turned it over to the vice bureau."

On cross-examination the witness stated:

"The whisky was not destroyed at the police station. All the whisky is still there. Lieutenant Reid was in charge of the vice bureau at that time. I have not seen the whisky since. We labeled the boxes in which the whisky was placed. I am unable to recall the name of the whisky we labeled. This hotel is known as the Belmont Hotel, 118½ North Broadway. It is an upstairs hotel. It has several rooms, I think probably 25. I have never counted the rooms, and I do not know how many there are."

P. L. Borden, a witness for the state testified:

"I know the defendant Cecil Gragg; have known him about two years. On the evening of the 18th of September, 1937, the defendant was at 118½ North Broadway at the Belmont Hotel which is on the second floor of the building. He was in behind the desk at the time we went into the hotel. We served him with a search warrant to search the premises, and he stated that Mr. and Mrs. Sanford were at the hospital attending their son who had been

injured in an accident a short time prior to that day. We found the liquor. We found 48 pints. The defendant said it was his whisky. He said he had it to sell. The defendant at the time we made the search was engaged in the liquor business. The liquor that we seized is in the store room in the police station."

On cross-examination the witness stated:

"It is at the Belmont Hotel where we found the liquor. It was about 10 or 10:30 in the evening when we went to the hotel. The whisky was found in three or four different places. In getting the search warrant to search this hotel, we had a John Doe search warrant issued. I knew when we got the warrant who operated the hotel. Mr. Sanford is the owner. The defendant Cecil Gragg works there at the hotel. The defendant was behind the desk the night we went there to search the hotel. I knew who operated the hotel at the time I got the John Doe search warrant. At the time we got this John Doe search warrant, we knew who was the owner and operator of the hotel, and I knew it was not John Doe. We knew it wasn't John Doe. I knew there was some 25 or 30 rooms operated there by Mr. Sanford at that hotel and at that address. The reason we got the John Doe search warrant, I did not know whether Mr. Sanford would be running the place or not. And if Mr. Sanford, the owner of the place and the operator, wasn't there, we could search anybody else that might be there; and the purpose of the John Doe warrant was that we might search anybody else's room."

The motion to strike was overruled, and the defendant reserved exceptions.

"We found one pint in a floor plant. A plant is a secret place built in the floor to store liquor. A number of pints in the south hall directly in front of the gents' toilet in a floor plant. We also found some in the pay telephone, located in the hallway near the lobby of the hotel. The defendant knew where we found the whisky."

The whisky alleged to have been seized at the hotel was presented and identified by the witness as being whisky they found at the hotel on September 18, 1937.

On cross-examination the witness stated:

"We have not been in possession of this liquor since it was taken from the hotel. I turned it over to Lieutenant Reid. I got it today from a man named Bergman. I cannot tell you the different kinds of brands of the whisky."

The whisky, alleged to have been taken from the hotel at the time the defendant was arrested, was introduced in evidence over the objections of the defendant.

The foregoing is in substance the testimony offered on behalf of the state.

At the close of the testimony, the defendant demurred to the evidence offered on the part of the state for the reason there is not sufficient testimony to substantiate the charge in the information and none sufficient to warrant the court in giving the case to the jury, and moved the court for a directed verdict.

The demurrer was overruled, and the defendant was given an exception.

A motion for a directed verdict was made, overruled, and exception saved.

The defendant did not introduce any evidence, but elected to stand on his demurrer to the state's evidence.

In his petition in error he assigns four errors alleged to have been committed by the trial court.

The brief filed in 66 Okla. Cr. 163, 90 P. 2d 454, was asked to be considered as a brief in this case. The third assignment of error is that said search was unlawful and without authority of law. This assignment is the only one that is deemed necessary to consider in this case for the reason the other assignments relate to facts not apparent in the trial of the case at bar.

On the motion to suppress, the testimony shows that the defendant was at the Belmont Hotel, at 118½ North Broadway, which hotel was stated by one of the deputies to have been operated by a man by the name of Sanford.

When the officers secured a search warrant and went to search the hotel, they found the defendant behind the desk of the hotel, and he advised them that Mr. and Mrs. Sanford had gone to the hospital where their son was, that had been injured.

A copy of the search warrant was served, and they found at different places, concealed in what the officers designate as a plant, 48 pints of whisky. The officers stated they asked the defendant whose whisky it was, and he told them it was his.

The motion to suppress the evidence was properly overruled by the court for the reason that the officers had a search warrant to search the hotel, and by reason of that warrant in making the search, they found the 48 pints of whisky, testified to by them.

Without further lengthening this opinion, we hold that the testimony was sufficient to sustain the judgment, and that there are no errors in the record prejudicial to the rights of the defendant.

After reading the record, it is apparent that this defendant was engaged in handling whisky for the purpose of selling or disposing of the same to others.

The judgment is affirmed.

DOYLE, P. J., and BAREFOOT, J., concur.